UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHARLES WALTER WEBER,<br>Plaintiff,<br>v.<br>LESLIE E. OCONNOR, et al.,<br>Defendants. | CASE NO. 2:25-CV-2212-TSZ-DWC<br>REPORT AND RECOMMENDATION<br>Noting Date: **September 14, 2026** |

This prisoner civil rights action has been referred to United States Magistrate Judge David W. Christel. Before the Court is a Motion to Dismiss Plaintiff Charles Walter Weber's Amended Complaint (Dkt. 21), filed by Defendants Leslie E. O'Connor, Catherine M. Kopoian, and Kevin Browne (collectively "Defendants"). Dkt. 22. Plaintiff, through counsel, responded to the Motion. Dkt. 23. Defendants filed a timely reply. Dkt. 24.

Upon review, the Court recommends the Motion to Dismiss (Dkt. 22) be granted in part and denied in part as stated in the conclusion below.

## I. BACKGROUND

Plaintiff, an inmate in the custody of the Washington State Department of Corrections ("DOC"), initiated this action under 42 U.S.C. § 1983. Dkt. 1. Defendants moved to dismiss

Plaintiff's initial complaint, which was prepared before he obtained counsel in this action. Dkt. 13. On April 3, 2026, the undersigned issued a Report and Recommendation recommending Defendants' motion to dismiss the initial complaint be granted and that Plaintiff be permitted leave to amend. Dkt. 19. On June 10, 2026, United States District Judge Thomas S. Zilly adopted the Report and Recommendation and granted Plaintiff leave to file an amended complaint. Dkt. 20.

Plaintiff, through counsel, filed an Amended Complaint on June 17, 2026. Dkt. 21. Plaintiff organizes his Amended Complaint into four claims and, as defendants, Plaintiff names Leslie E. O'Connor, Catherine Kopoian, and Kevin Browne, as well as "Defendant Does I through X." *Id.* at 2–3. In Claim One asserted against "all defendants," Plaintiff alleges Defendants O'Connor, Kopoian, and Browne retaliated against him for engaging in activity protected by the First Amendment. *Id.* at 8–10. In Claim Two asserted against "all defendants," Plaintiff alleges Defendants O'Connor, Kopoian, and Browne violated the Equal Protection Clause by intentionally treating him differently from similarly situated inmates without a rational basis for doing so. *Id.* at 10–11. In Claim Three asserted against Defendant Kopoian, Plaintiff alleges that Defendant Kopoian violated his right to procedural due process by failing to provide adequate notice of a meeting to discuss the termination of his prison employment. *Id.* at 12–13. In Claim Four, Plaintiff alleges further procedural due process violations against "all defendants" arising from his termination, discipline, loss of earned good-time credits, classification, and housing consequences. *Id.* at 13–15.

On July 1, 2026, Defendants O'Connor, Kopoian, and Browne moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 22.

## II. STANDARD OF REVIEW

A motion to dismiss can be granted only if a plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in the amended complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* Further, the Court "may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). In sum, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims).

## III. DISCUSSION

In their Motion, Defendants contend Plaintiff fails to plausibly allege conduct by any Defendant constituting First Amendment retaliation and that Plaintiff's Fourteenth Amendment equal protection and due process claims against them also fail as a matter of law. *See* Dkt. 22. In response, Plaintiff argues that Defendants' arguments for dismissal mischaracterize the nature of his claims, that he has plausibly alleged constitutional violations against each Defendant, and that he should be granted leave to amend any deficiencies in his Amended Complaint. *See* Dkt. 23.

### A. First Amendment Retaliation (Claim One)

Defendants first argue that Plaintiff fails to plausibly allege his protected conduct was a substantial or motivating factor in the challenged actions of any Defendant or that the challenged actions lacked a legitimate penological purpose. Dkt. 22 at 6–13. Plaintiff argues that Defendants ignore factual allegations supporting a reasonable inference of retaliation. Dkt. 23 at 5–11.

1. <u>Factual Allegations</u>

Plaintiff alleges that, on January 29, 2024, Defendant O'Connor informed Plaintiff and other inmate gardeners that they would be required to wash and prepare vegetables as part of their work assignments. Dkt. 21 at 4. Then, in mid-May 2024, Defendant O'Connor installed vegetable-preparation tables for the gardeners to use. *Id.* Shortly thereafter, Plaintiff filed grievances challenging the new requirement that gardeners perform duties outside their assigned job classifications. *Id.*

On June 7, 2024, Plaintiff allegedly discovered an aphid infestation in the prison garden and removed the affected plants allegedly to prevent the infestation from spreading. *Id.* at 5. Plaintiff's direct supervisor, Nonparty Susan Collins, subsequently issued Plaintiff a general infraction for removing a portion of the garden without supervisor approval. *Id.* Plaintiff was

found guilty of plowing the garden without permission and found not guilty of destroying the garden. *Id.* However, the guilty finding was reversed on June 26, 2024. *Id.*

Two days later, on June 28, 2024, Plaintiff attended a Facility Risk Management Team ("FMRT") meeting concerning his continued employment and alleges that Defendants Browne and Kopoian attended the meeting. *Id.* at 6, 13. During the FMRT meeting, Plaintiff states that he objected to his termination and stated that, if his job was not restored, he intended to pursue legal remedies. *Id.* at 6. According to Plaintiff, Defendant Browne responded that Plaintiff was threatening him and subsequently stated that Plaintiff could "file paperwork," but Browne knew how to file paperwork too. *Id.* Plaintiff further alleges that Defendant Kopoian nodded when Defendant Browne made the latter statement. *Id.*

Plaintiff further alleges his supervisor, Nonparty Collins, attempted to advocate on his behalf, but that, at an unspecified point during the termination process, Defendant O'Connor directed that Nonparty Collins not be permitted to speak. *Id.* at 6–7. Plaintiff alleges that, as a result of Defendant O'Connor's alleged order, his termination decision was made without input from Nonparty Collins. *Id.*

On July 1, 2024, Plaintiff was served with a Washington Administrative Code § 137-25-030 (810) ("WAC 810") major infraction for failing to maintain employment as a result of his termination. *Id.* at 7. Plaintiff alleges the WAC 810 infraction was written by Defendant Kopoian and reviewed and approved by Defendant Browne. *Id.* According to Plaintiff, the WAC 810 infraction, which was later overturned, resulted in loss of earned good-time credits and other sanctions. *Id.*

Finally, Plaintiff alleges that, on July 25, 2024, Defendant Kopoian inserted a "false entry" reflecting a "Murder 2" conviction into his institutional record, which allegedly resulted in

changes to his custody arrangement and restricted his access to prison employment and other programming. *Id.* at 7.

Based on these allegations, Plaintiff contends that Defendants retaliated against him for engaging in protected activity in violation of the First Amendment. *Id.* at 8–10.

2. <u>Legal Standard</u>

To prevail on a First Amendment retaliation claim, a plaintiff must allege and prove the defendants retaliated against him for exercising a constitutional right and the retaliatory action did not advance legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under § 1983 for retaliation for engaging in protected speech must allege "the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1983).

Thus, within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Filing a grievance is protected conduct under the First Amendment. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989). To plead adverse actions sufficient to cause a chilling effect, a plaintiff must allege facts showing that the defendant's actions "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). If a defendant's acts did not actually chill the plaintiff's protected expression, then the plaintiff must show he suffered harm (or threats of harm) capable of chilling a person of ordinary firmness. *See Rhodes*, 408 F.3d at 568 n.11

("[H]arm that is more than minimal will almost always have a chilling effect.") (citing *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)).

To satisfy the "because of" element, a plaintiff must allege facts showing his protected conduct was "the substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citations and quotations omitted). At the pleading stage, it may be sufficient for a plaintiff to allege that an adverse action was taken soon after a defendant learned of his protected conduct. *Watison*, 668 F.3d at 1114.

Even so, conclusory allegations and "[m]ere speculation that defendants acted out of retaliation [are] not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In other words, the facts alleged must support a reasonable inference that retaliation did occur, as opposed to merely showing the order of events makes it conceivable that retaliation could have occurred. *See Watison*, 668 F.3d at 1114 ("Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events *from which retaliation can be inferred* is sufficient to survive dismissal.") (emphasis added); *see also West v. Ulloa*, No. 2:17-cv-04892-VBF-KES, 2019 WL 8108724, at *7 (C.D. Cal. Dec. 5, 2019), *aff'd*, No. 20-56167, 2022 WL 17412865 (9th Cir. Dec. 5, 2022) (finding *pro se* plaintiff's retaliation claim deficient because, despite suspect timing, the factual allegations were insufficient to support inference of retaliatory animus beyond speculative level); *Escamilla v. City of Santa Ana*, No. 8:19-cv-02229-JAK-ADS, 2021 WL 4317974, at *1 (C.D. Cal. Sept. 22, 2021), *aff'd*, No. 21-56326, 2023 WL 7040313 (9th Cir. Oct. 26, 2023) (same).

As for the fifth element that the action did not reasonably advance a legitimate institutional goal, legitimate institutional goals include "the preservation of internal order and discipline" and "the maintenance of institutional security." *Procunier v. Martinez,* 416 U.S. 396, 412 (1974), *limited by Thornburgh v. Abbott,* 490 U.S. 401 (1989). An action that furthers a

legitimate institutional goal it is not retaliation. *Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir. 1994) (citing *Rizzo,* 778 F.2d at 532). "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious or that they were unnecessary to the maintenance of order in the institution." *Watison*, 668 F.3d at 1114–15.

3. <u>Analysis</u>

Turing first to Defendant O'Connor, Plaintiff alleges he filed grievances against Defendant O'Connor shortly after she installed vegetable-preparation tables in mid-May 2024. Dkt. 21 at 4. Plaintiff further alleges Defendant O'Connor subsequently prevented his direct supervisor, Nonparty Collins, from providing potentially favorable testimony on Plaintiff's behalf during the termination process. *Id.* at 6–7.

Even assuming Defendant O'Connor's alleged conduct constituted an adverse action and that it did not reasonably advance a legitimate penological goal, Plaintiff does not allege sufficient facts demonstrating Defendant O'Connor acted "because of" his alleged protected conduct. In particular, Plaintiff does not allege facts showing Defendant O'Connor was aware Plaintiff filed grievances against her or that he engaged in other protected conduct before she allegedly prevented Nonparty Collins from participating in the termination process. Nor does Plaintiff allege any statements or other facts demonstrating that Defendant O'Connor's decision concerning Nonparty Collins was motivated by his protected conduct.

Plaintiff instead alleges generally that Defendants' actions were substantially motivated by his protected conduct and relies on the "close temporal proximity" between his protected activity and the alleged adverse actions. Dkt. 21 at 9–10. Absent individualized allegations that Defendant O'Connor knew of Plaintiff's alleged protected conduct, Plaintiff fails to plausibly allege Defendant O'Connor took any particular action "because of" that conduct. *See* Dkt. 19 at

13–14 (finding Plaintiff failed to plausibly allege First Amendment retaliation claim his initial complaint because, among other reasons, he failed to allege sufficient facts concerning “which Defendants were aware” of his grievances). Accordingly, Plaintiff does not state a cognizable First Amendment retaliation claim against Defendant O’Connor.

With respect to Defendants Browne and Kopoian, Defendants do not dispute that Plaintiff’s filing of grievances and threat of litigation constitute protected conduct and assume, for purposes of their Motion, that Defendants Browne and Kopoian’s alleged participation in Plaintiff’s termination and in imposing a subsequent major infraction constitute adverse actions. *Id.* at 7–8, 11. Defendants contend, however, that Plaintiff cannot demonstrate Defendants Browne and Kopoian acted “because of” his protected activities. *Id.* at 8–12. Defendants further contend that Defendants Browne and Kopoian’s challenged actions served legitimate correctional purposes. *Id.*

Here, Plaintiff alleges sufficient facts to plausibly establish that Defendants Browne and Kopoian took the alleged adverse actions “because of” Plaintiff’s protected conduct. In particular, Plaintiff alleges that, during the FMRT meeting concerning his continued employment, he stated in the presence of Defendants Browne and Kopoian that he intended to pursue legal remedies if his employment was not restored. Dkt. 21 at 6. Defendant Browne allegedly responded that Plaintiff was threatening him and stated Plaintiff could “file paperwork,” but that Defendant Browne knew how to file paperwork too. *Id.* Defendant Kopoian allegedly nodded in apparent assent of Defendant Browne’s statement. *Id.*

Three days later, on July 1, 2024, Defendant Kopoian served Plaintiff with a WAC 810 major infraction for failing to maintain employment, which Defendant Browne reviewed and approved. *Id.* at 7.

Defendants argue Plaintiff has failed to allege that Defendants Browne and Kopoian took any adverse action "because of" his protected activity because Defendants allegedly did not learn of any protected activity until after Plaintiff's termination decision was already underway. Dkt. 22 at 8–9. Even if the Court were to credit this argument regarding Defendants Browne and Kopoian's alleged role in Plaintiff's termination, Plaintiff also alleges that both Defendants participated in imposing a major infraction separate from the termination decision. *Id.* at 6–7. This separate adverse action allegedly occurred after Defendants Browne and Kopoian witnessed Plaintiff's threats to pursue legal action. *Id.* Thus, Plaintiff alleges facts showing Defendant Browne and Kopoian's knowledge of his protected conduct and their participation in a subsequent adverse action within days of that conduct. These allegations are sufficient at this stage to support a reasonable inference that Plaintiff's protected conduct was a substantial or motivating factor in the subsequent adverse action.

Plaintiff also sufficiently alleges that the challenged conduct by Defendants Browne and Kopoian lacked a legitimate penological purpose. Plaintiff alleges he removed aphid-infested plants to prevent the infestation from spreading, that no DOC policy required prior approval to remove diseased plants, and that the resulting disciplinary finding was reversed before the FMRT. Dkt. 21 at 5–6. Plaintiff further alleges the subsequent WAC 810 infraction was ultimately reversed, supporting a reasonable inference that it did not reasonably advance a legitimate penological goal. *Id.* at 6. Defendants contend Plaintiff's removal of plants without his supervisor's permission nevertheless provided a legitimate correctional basis for his termination and discipline because Plaintiff demonstrated poor judgment and failed to respect the chain of authority. Dkt. 22 at 9–12. At this stage, however, whether Plaintiff's conduct ultimately provided a legitimate correctional basis for the challenged actions presents a factual question that cannot be resolved against Plaintiff at the pleading stage.

Accordingly, Plaintiff has stated a cognizable First Amendment retaliation claim against Defendants Browne and Kopoian but has failed to do so with respect to Defendant O'Connor.

**B. Equal Protection (Claim Two)**

Next, Defendants argue that Plaintiff's equal protection claim should be dismissed because he does not allege membership to a protected class. Dkt. 22 at 13–14. And to the extent Plaintiff intends to proceed on a class-of-one theory, Defendants argue that such claims may not be based on the sort of discretionary decision making challenged here and, furthermore, Plaintiff's equal protection claim is an improper recitation of his First Amendment retaliation claim. *Id.* In response, Plaintiff concedes he proceeds on a class-of-one theory and argues that his allegations concerning (1) the lack of notice given before the FMRT meeting and (2) the insertion of a fabricated Murder 2 conviction in his institutional record do not arise from discretionary decision making and, as such, he should be permitted to proceed with his class-of-one equal protection claim on that factual basis. Dkt. 23 at 12.

1. <u>Factual Allegations</u>

Plaintiff alleges his equal protection claim is based on his termination from employment, the issuance of the WAC 810 major infraction, imposition of maximum sanctions, and insertion of a fabricated Murder 2 conviction in his institutional record. Dkt. 21 at 10–12. Plaintiff further alleges that Defendants acted irrationally, arbitrarily, and based on animus derived from Plaintiff's grievance activity, objections to policies, and threats of legal action. *Id.* at 12.

2. <u>Legal Standard</u>

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a claim under a class-of-one theory, a plaintiff must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis

for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Class-of-one claims are not cognizable in contexts that involve discretionary decision-making based on individualized assessments. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008). The Supreme Court has explained:

> In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist*, 553 U.S. at 603 (finding class-of-one claim was not cognizable in context of at-will employment decisions).

"Inmates are not entitled to identical treatment as other inmates merely because they are all inmates." *McQueary v. Blodgett*, 924 F.2d 829, 834–35 (9th Cir. 1991). Courts regularly find that "prisoners' class-of-one claims alleging arbitrary treatment are not cognizable due to the discretionary decision-making inherent in the management of prisons and treatment of prisoners." *Glassey v. Ryan*, No. 12-cv-1490-PHX-PGR (ESW), 2016 WL 6080672, at *4 (D. Ariz. Mar. 7, 2016) (collecting cases); *Morrison v. Vierra*, 804 F. App'x 774 (9th Cir. 2020) (holding that a district court properly dismissed a prisoner's equal protection claim regarding prison employment because "the 'class-of-one' theory does not apply in the context of discretionary personnel decisions in public employment.").

3. <u>Analysis</u>

Plaintiff's equal protection claim, which proceeds on a class-of-one theory, may not be premised on discretionary decision making, such as those relating to termination from employment, issuance of infractions, and imposition of sanctions. This is the same deficiency the Court found with the equal protection claim alleged in Plaintiff's initial complaint. Dkt. 19 at 17 ("[T]he recommendations and decisions Plaintiff challenges are discretionary determinations

involving individualized assessments, which do not support a cognizable equal protection claim under a class-of-one theory.”).

Additionally, Plaintiff “cannot simply recharacterize [his] First Amendment retaliation claim as a violation of the Equal Protection Clause.” *Doe v. Pasadena Unified Sch. Dist.*, No. CV 18-905 PA (FFMX), 2018 WL 5880187, at *4 (C.D. Cal. Sept. 26, 2018), *aff'd*, 810 F. App'x 500 (9th Cir. 2020) (collecting cases from the First, Second, Fourth, Seventh, and Eleventh Circuits); *see also Wilcox v. Lyons*, 970 F.3d 452, 461 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2754 (2021) (citing cases from the Third, Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits and noting that the Second Circuit is the only court to reach a contrary conclusion); *c.f. Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1150 n.16 (9th Cir. 2025) (distinguishing overlapping retaliation and disparate treatment claims based on viewpoint from those premised only on engagement in protected activities). Plaintiff does not meaningfully distinguish his equal protection theory from his First Amendment retaliation claim. Indeed, Plaintiff specifically alleges that Defendants treated him differently based on animus arising from the same protected conduct underlying his retaliation claim. Dkt. 21 at 12. Thus, notwithstanding Plaintiff's identification of potential nondiscretionary decisions, his equal protection claim remains premised on the Defendants' alleged retaliation for his protected conduct and Plaintiff may not repackage his First Amendment retaliation theory as a separate equal protection violation. *Doe*, 2018 WL 5880187, at *4.

Accordingly, Plaintiff has failed to state a cognizable equal protection claim against any Defendant.

**C. Due Process (Claims Three and Four)**

Defendants next argue Plaintiff's due process claims fail because he does not plausibly allege the deprivation of a constitutionally protected interest resulting from the denial of

constitutionally required process. Dkt. 22 at 15–17. Specifically, Defendants contend Plaintiff has no protected interest in prison employment, housing, classification, or programming and that, although earned good-time credits constitute a protected liberty interest, Plaintiff does not identify any process Defendants failed to provide in connection with their loss. *Id*. In response, Plaintiff argues that his due process claims are not premised merely on loss of employment but on collateral consequences implicating a protected interest, such as loss of good-time credits, and further argues that unspecified procedures provided to Plaintiff were "fundamentally unfair." *Id.* at 11.

1. <u>Factual Allegations</u>

Plaintiff alleges two procedural due process claims in the Amended Complaint. Dkt. 21 at 12–15. In Claim Three, Plaintiff alleges Defendant Kopoian convened an FMRT meeting to determine whether Plaintiff would be terminated from his prison employment without providing Plaintiff advance notice of the meeting. *Id.* at 12–13. Plaintiff alleges DOC policy required 24-hour advance notice for such meetings and that, because he received no notice, he lacked a meaningful opportunity to prepare for or participate in the proceeding before his termination. *Id.* at 13. Plaintiff additionally alleges that, as a result of "defendant's actions," he suffered loss of earned good-time credits, reduction in custody status, loss of favorable housing, and adverse classification decisions. *Id.* at 12.

In Claim Four, Plaintiff alleges Defendants Kopoian, Browne, and O'Connor deprived him of protected liberty interests through his termination from prison employment, issuance of a major infraction, loss of earned good-time credits, reduction in custody status, removal from his one-man cell, and other disciplinary and classification consequences. *Id*. at 13–15. Plaintiff further alleges that Defendants relied on false information in making classification and housing decisions, continued discipline after the underlying infraction was reversed, and suppressed input

from his direct supervisor. *Id.* at 14–15. Plaintiff alleges generally that Defendants failed to provide meaningful notice and a meaningful opportunity to be heard before these deprivations occurred. *Id*. at 15.

2. Legal Standard

Pursuant to the Due Process Clause of the Fourteenth Amendment, "no state shall 'deprive any person of life, liberty, or property without due process of law.'" *Toussaint v. McCarthy*, 801 F.3d 1080, 1089 (9th Cir. 1986), *overruled on other grounds, Sandin v. Conner*, 515 U.S. 472 (1995). "At its core, the constitutional requirement of due process requires 'some kind of notice and ... some kind of hearing.'" *Altiero v. Cnty. of Spokane*, 766 F. Supp. 3d 1108, 1117–18 (E.D. Wash. 2025), *aff'd*, No. 25-1588, 2026 WL 2255441 (9th Cir. Aug. 5, 2026) (quoting *Goss v. Lopez*, 419 U.S. 565, 579 (1975)). The due process guarantees of the Fourteenth Amendment thus "apply only when a constitutionally protected liberty or property interest is at stake." *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993).

To state a procedural due process claim, a plaintiff must allege facts demonstrating "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). To allege a protected liberty interest was at stake, a plaintiff must present facts showing he suffered an "atypical, significant deprivation" as a result of the purported due process violation. *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486).

3. Analysis

Plaintiff's prison employment is not a constitutionally protected liberty or property interest. *See* Dkt. 19 at 18–19 (citing *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) ("[T]he Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty

interest in prison employment[.]'")). Nor do Plaintiff's allegations concerning changes to his housing, custody, and classification status, without more, establish an atypical and significant hardship giving rise to a protected liberty interest. Dkt. 19 at 18–19 (collecting cases).

Although Plaintiff's alleged loss of earned good-time credits implicate a protected liberty interest, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974), Plaintiff does not allege facts plausibly connecting the deprivation of that interest to a lack of constitutionally adequate process. Indeed, the only specific procedural deficiency identified in Claims Three and Four is Defendant Kopoian's alleged failure to provide advance notice of the FMRT meeting concerning Plaintiff's termination from employment.[1] Dkt. 21 at 12–15. Plaintiff does not allege the FMRT adjudicated the subsequent major infraction or imposed the sanction revoking his good-time credits, nor does he otherwise allege facts showing how the lack of notice before the FMRT caused him to lose those credits. *See* Dkt. 19 at 18–19 ("[Plaintiff] does not sufficiently allege what procedural protections he was owed that Defendants…failed to provide[.]"). Plaintiff's remaining general allegations that Defendants failed to provide "meaningful notice and a meaningful opportunity to be heard" are conclusory and do not demonstrate his entitlement to relief against any Defendant. *Id.* at 15.

Accordingly, Plaintiff fails to state a procedural due process claim against any Defendant.

**D. Leave to Amend**

Finally, Plaintiff requests that the Court grant leave to amend any deficiencies in the Amended Complaint. Dkt. 23 at 12–13. As Plaintiff has previously been advised of the deficiencies in his claims and granted an opportunity to amend his complaint with the assistance

---

[1] Plaintiff incorrectly contends that Defendant Kopoian's alleged failure to follow the mandatory notice requirement also creates a protected liberty interest. Dkt. 21 at 12. The existence of mandatory language in prison regulations does not, standing alone, create a protected liberty interest. *Chappell v. Mandeville*, 706 F.3d 1052, 1064 (9th Cir. 2013) (recognizing a prior methodology focusing on mandatory language in prison regulations has been "abandoned" or "overruled").

of counsel, *See* Dkts. 19, 20, 21, Plaintiff's request for dismissal with leave to amend should be denied.

## IV. CONCLUSION

For the above stated reasons, the undersigned recommends the Motion to Dismiss (Dkt. 22) be denied with respect to Plaintiff's First Amendment retaliation claims against Defendants Kopoian and Browne and granted with respect to Plaintiff' First Amendment retaliation claim against Defendant O'Connor and to his equal protection and due process claims against all Defendants. It is further recommended that dismissal be entered without granting Plaintiff further leave to amend.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 14, 2026**.

Dated this 25th day of August, 2026.

David W. Christel
United States Magistrate Judge